JOHN C. YERGER, APPELLANT, v. WILLIAM H. JONES, AND ROBERT S. BRANDON, EXECUTORS OF WILLIAM BRANDON, DECEASED.

Where a person who was acting as guardian to a minor, but without any legal authority, being indebted to the minor, contracted to purchase real estate for the benefit of his ward, and transferred his own property in part payment therefor, the ward cannot claim to receive from the vendor the amount of property so transferred.

He can either complete the purchase by paying the balance of the purchase-money, or set aside the contract and look to his guardian for reimbursement; but in the absence of fraud, he cannot compel the vendor to return such part of the purchase-money as had been paid by the guardian.

THIS was an appeal from the District Court of the United States for the Northern District of Alabama, sitting as a court of equity.

It was a bill filed by John C. Yerger, a minor, suing by his next friend, against William Brandon in his lifetime, and after his death revived against his executors.

The material facts in the case were not disputed; but the controversy depended upon the construction put upon those facts.

In 1835, Albert Yerger, the father of the appellant, and a citizen of Tennessee, made a nuncupative will and died. In this will he expressed his desire that, with certain exceptions, all his property should be equally divided between his wife and son. There was also this clause in it; and he also stated he wished Col. James W. Camp to manage his plantation, and to have discretionary power as to its management, and to sell it if he thought it most beneficial to do so; and he desired, and declared his will to be, that his son should have his plantation.

Camp removed into Madison county, Alabama, at some period which is not exactly stated in the record, but probably about 1837. He carried with him some eight or ten negroes, which belonged to the boy.

In August, 1842, and May, 1843, Camp executed two deeds of trust to James W. McClung, for the benefit of certain creditors.

On the 14th of August, 1843, McClung had a sale of the property, when William Brandon purchased the tract of land upon which Camp lived, containing nine hundred and sixty acres.

On the 23d of August, 1843, Camp made an arrangement with Brandon to this effect, viz. that Camp should repurchase the land from Brandon for eight thousand dollars, give his note for that sum payable in two years with interest, and convey cer-

tain property to him as security. Brandon, on his part, gave to Camp a bond of conveyance.

The language made use of in these instruments was as follows:

In the first it is said " Whereas the said James W. Camp, as guardian of said John C. Yerger, and for the benefit of said John C. Yerger, hath this day purchased, &c., &c., &c."

The note was as follows:

HUNTSVILLE, August 23, 1843.

Within two years from the date above, I, James W. Camp, as guardian of John C. Yerger, promise to pay William Brandon eight thousand dollars with interest from date, being the amount which I, as guardian, have agreed to give the said William Brandon for the tract of land whereon I now live, for the benefit of said John C. Yerger.

In testimony whereof I hereunto set my hand and seal.

JAMES W. CAMP. [SEAL.]

The conveyance to Brandon to secure the above note included a considerable amount of personal property, and ran as follows:

To have and to hold all the above described property to said William Brandon, his executors, administrators, or assigns forever. Upon trust, nevertheless, that said Brandon shall take immediate possession of all the above described property; that he shall gather said crops and sell them, and all the other property above described, either at public or private sale, as may appear best, for ready money; that said Brandon may retain out of the proceeds of sales reasonable compensation for his trouble and expense in executing the trust hereby created; and the said Brandon shall apply the residue of said proceeds to the payment, as far as they will extend, of the debts first above mentioned, all to be done as early as practicable; and the said William Brandon hereby covenants, to and with the said James W. Camp, that he, the said William Brandon, will faithfully execute the trusts above reposed in him, but without being responsible for losses beyond his control.

From August, 1843, to January, 1845, Brandon continued to make sales of the property, sometimes at public auction and sometimes at private sale.

On the first of January, 1844, Camp made out an account between himself and Yerger, by which it appeared that he owed Yerger on that day, (chiefly for the hire of negroes,) $8,017.29.

In 1845, Camp died insolvent.

On the 4th of October, 1847, Yerger filed his bill, reciting most of the above facts, and charging

That Camp, as guardian of complainant, contracted on 23d of August, 1843, with the defendant, to purchase of defendant for the use of complainant, certain real estate mentioned in the bond of conveyance, executed by defendant to Camp, as guardian. The complainant charges that Camp had no authority by the laws of Alabama to convert his ward's personal into real estate, at least without the direction of a court of equity, which was not obtained; and that said contract was prejudicial to the complainant, as the property was not worth more than half of what Camp, as guardian, agreed to give for it; that to secure the payment, Camp, on 23d August, 1843, executed a deed of trust, filed with the bill. By sales of property under this deed of trust, and otherwise, Camp paid the defendant 5 or $6,000 on account of the purchase, and the present bill alleges, that these payments are to be regarded in equity as payments made on account of the complainant, and out of funds in the hands of Camp as his guardian; that he is entitled to have the contract rescinded and the money previously paid to defendant paid to complainant with interest; that Camp died in Alabama on 9th October, 1845, wholly insolvent, and there was no administration upon his estate. The bill further states, that the defendant claims a large balance on account of the contract, for which complainant would be responsible in case the contract is binding.

The defendant, William Brandon, put in his answer, admitting the Exhibit C to bill, and the sale of the land, and the contract thereby shown; and also Exhibit D to bill, the deed of trust from Camp to him, stating that he sold all the property embraced in that deed (except a few articles referred to) for $5,234.23, and retained out of said proceeds, agreeably to the provisions of the deed, $1,868.47, as a reasonable compensation for gathering the crops and selling the property, and refers to his Exhibit H, as his account of sales, with his charges for expenses and trouble. He then states, that a short time after the execution of the deed of trust, two parties having executions against Camp, levied upon certain articles contained in the deed of trust; for which they and the sheriff levying, were sued by the defendant, and judgment for $1,607.38 obtained against them, which sum the defendant collected; but he claims that counsel-fees for prosecuting that matter, the amount of which is not yet ascertained, should be deducted from the amount of the judgment; states that, with these exceptions, nothing else had been received by him on account of the land, and there still remained a balance due; admits that Camp died insolvent; that at the time of his death, and for many years previous, he resided in Alabama; he died intestate, and no administration had ever

been taken out upon his estate; that complainant's father lived in Tennessee and there died, while the complainant was quite a small boy, and that he is a minor; that, some years ago, Camp brought complainant to Alabama, "where he kept and treated him as a member of his family, and seemed to control him and his property." But he denies that Camp was ever appointed guardian of the complainant, either by any court, or the will of the father; or that he ever was his guardian. The contract for the land and the deed of trust securing the purchase-money, were both made in Alabama, and all the property embraced in the latter, and sold under said deed, belonged to Camp individually, and not in the capacity of guardian.

He states: The purchase was made by Camp, to be paid for out of his own individual property, and not out of that of complainant. The land was worth what Camp agreed to pay, and there was no fraud contemplated by the purchase or the sale, either on the part of Camp or the defendant. He insists that his lien for the balance of the purchase-money is binding, and avers his readiness, upon the payment of the balance, to convey the land according to the contract; suggesting the necessity of making Camp's personal representative a party to the bill, and denying all fraud and combination, prays to be dismissed.

On the 17th November, 1852, the court dismissed the bill with costs, and the complainant appealed to this court.

The cause was argued by *Mr. Reverdy Johnson* and *Mr. Reverdy Johnson, Jr.*, for the appellant, and *Mr. Badger*, for the appellees.

The counsel for the appellant made the following points:

1st. The bill and answer showing that Camp, the guardian, died insolvent, and that there was no administration upon his estate, the bill is not defective for want of his personal representative as a party. 1 Story's Eq. Pl. § 91.

2d. The relation of guardian and ward subsisting in fact between Camp and the complainant, (though Camp may never have been legally appointed guardian,) Brandon dealing with the guardian, as such, and having, therefore, full notice of the fiduciary capacity in which he acted, cannot in equity, while seeking to maintain the contract, deny the existence of the guardianship. 1 Story's Eq. Jur. § 511; 2 Ib. § 1356; Field *v.* Schieffelin, 7 Johns. Ch. R. 150; Lloyd *v.* Ex'r. of Cannon, 2 Desaus. 232; Drury *v.* Connor, 1 Har. & Gill, 220; Bibb *v.* McKinley, 9 Porter's (Alab.) R. 636.

3d. By the contract itself, (Exhibit C,) and the deed of trust of 23d August, 1843, (Exhibit D,) apart from the declarations of Brandon, in evidence, he and his representatives are estopped

denying that Camp was the guardian of complainant. 1 Phil-lips's Evid. 367; Cowen & Hill's Notes to same, 1st Part, 372.

4th. The contract for the purchase is not binding upon the complainant, and Camp being insolvent at the time, and largely indebted to the complainant, equity will regard the payments on the purchase made under the trust deed (Exhibit D) as so much money paid out of the ward's funds on account of the land, and will decree them to be reimbursed. 2 Story's Eq. Jurisp. §§ 1257 and 1357; 2 Kent's Com. 229; Cawthorn *v.* McCraw, 9 Alabama R. 519.

5th. The contract should be set aside, because the evidence shows that the investment was injurious to the infant — the land not being worth $8,000.

6th. The amount, claimed by Brandon as a reasonable com-pensation under the deed of trust, is exorbitant, being more than twenty per cent. on the amount of sales — and is unsus-tained by the evidence.

The counsel for the appellees made the following points:

*First.* That Camp was not the guardian of appellant, the will of his father not appointing him guardian. Peyton *v.* Smith, 2 Dev. & Bat. Eq. 325.

*Secondly.* That there is no proof admissible against the ap-pellees, that at the time of the contract for the land in August, 1843, Camp was indebted to appellant at all; and if there were such proof, it cannot be heard by the court for want of an alle-gation in the bill of the existence of such indebtedness at that time, the only averment in the bill being that at the time of his death, which the bill avers took place in October, 1845, more than two years thereafter, he was so indebted.

*Thirdly.* That it is proved the land was fully worth the price agreed to be given for it.

*Fourthly.* That it is fully proved that all the property con-veyed by the deed of trust to secure payment of the purchase-money of the land, belonged to Camp in his own right, and none of it ever belonged to appellant. As, therefore, Camp might have applied these funds of his own to purchase the land for himself, it is absurd to suppose it an injury to the appellant to apply them in making the purchase for the benefit of appellant.

*Fifthly.* That there is no evidence, at all events none admissi-ble against the appellees, that any thing whatever was paid to William Brandon, on account of the purchase, from any other source than the sale of the property conveyed by the deed of trust; and, therefore, that no money, funds, or effects of the ap-pellant, in the hands of Camp, or elsewhere, were paid to or received by Brandon.

And, therefore, it will be insisted that the appellant's bill is without support in any point material to the relief asked by him, supposing such relief could be rightfully claimed upon his bill, if proved to be altogether true.

But it will be further insisted, that if the case made by the bill and the proofs were that Camp, being the guardian of appellant, and having funds of his ward in his hands, had purchased the land for his ward, and paid for it with those funds, with an intent to convert the funds into real estate, the appellant would not be entitled, upon these facts merely, to call for an account of the money from Brandon; for such purchase might be a wise and judicious investment: as if the ward had slaves without lands on which to employ them, and money with which lands could be purchased; and Brandon could only be liable for partaking in an apparently injurious application of the ward's funds, in itself implying a breach of trust. However, it might be a question whether the ward might not, on his arrival at age, repudiate the purchase as between the guardian and himself, and call upon the guardian to keep the land and account for the money; because, further, the right to elect either to take the purchased land or repudiate the contract, is one to be exercised by the ward on arriving at full age, and ought not to be trusted to a next friend: because, to hold the contrary would be to embarrass without necessity, and with great injury to the public, all the transactions of guardians in investing the funds of their wards; and because, finally, this purchase would have been, upon the supposition made, an advantageous one to the ward, and its character is not to be affected by events of subsequent occurrence.

It will be also insisted that the ground taken in Brandon's answer, that a personal representative of Camp is a necessary party to this suit, is a sound one. To determine the right of the appellant, upon the very frame of his bill, requires the accounts between himself and his guardian to be taken; but this can only be done when his personal representative is before the court.

Finally, it will be insisted that, upon any view of this case, the bill was properly dismissed, and the decree below must therefore be affirmed.

Mr. Justice GRIER delivered the opinion of the court.

The appellant, John C. Yerger, a minor, suing by his next friend, filed his bill against William Brandon, setting forth that the father of complainant died in the State of Tennessee, leaving him his only child and heir at law; that his father made a nuncupative will, by which James W. Camp was appointed

guardian of complainant; that Camp, acting as such, took possession of his property, and removed to the State of Alabama, where he died in 1845, insolvent. That at the time of his death Camp was largely indebted to his ward for the use and hire of his slaves, and stated an account admitting the sum of about six thousand dollars to be due. That Camp contracted with Brandon to purchase a tract of land, for the use of his ward, for the price or sum of $8,000. That Camp paid to Brandon about five or six thousand dollars, on account of such purchase, by a sale of certain property under a deed of trust. That Camp had no right, as guardian, to convert the personal property of his ward into real estate; that the price agreed to be paid for the land was exorbitant, and a large balance is still due on said contract, which the complainant is unwilling to pay in order to obtain the title. He therefore prays the court to rescind and annul the contract, to take an account of the payment made by Camp and Brandon, and decree that the amount be restored to the complainant.

The answer denies that Camp was the legal guardian of complainant — but admits that he lived in the family of Camp after he came to Alabama, and apparently under his control. That the purchase made by Camp was for a fair price, and the property transferred by him, in part payment, was the property of Camp and not of complainant; and that the contract was made without any view to injure or defraud the complainant, and did not have that effect; and that respondent is ready and willing to convey the tract of land to complainant, on receipt of the balance of the purchase-money.

The evidence in the case does not show that Camp was appointed guardian of the complainant by his father's will or by any competent legal authority, either in Tennessee or Alabama. But it appears that when Camp came to Alabama, that the complainant lived in his family, and that Camp acted as his guardian, having control of his person and of his property, which consisted of negroes. Camp had a farm of 960 acres in Alabama, and employed the negroes of complainant to work for him, and was largely indebted to him on account thereof. He was indebted also to Brandon, and his farm was subject to a deed of trust or mortgage. To satisfy this mortgage the land was sold and bid in by Brandon for the sum of $4,500. Some negroes belonging to Camp were also included in the mortgage, and were bid in for the sum of over $2,000, for the use of Yerger, (the complainant,) and paid for by Camp. An agreement was also made between Camp and Brandon, that Brandon should convey the farm purchased by him to the complainant, on receiving the sum of eight thousand dollars, being the amount of the pur-

chase-money advanced by Brandon and of the debt due by Camp to him. To secure the payment of this sum Camp gave Brandon a bill of sale, or trust deed, for a large amount of personal property, consisting of 350 acres of cotton, 450 acres of corn, 300 hogs, besides horses, mules, farming utensils, &c. Brandon was to sell this property, and apply it in payment of this contract for the land, after deducting reasonable compensation for his trouble and expenses. The defendant, in his answer, admits the amount of sales under this trust to be $5,235.24; deducting charges and expenses, $1,868.48, leaves a balance applicable to the purchase-money of the farm, of $3,365.75.

The bill does not allege that there was any fraud or collusion between the parties to this transaction, or any intention to injure the complainant. Nor would the evidence in the case support any such allegation. Brandon was endeavoring to secure his own debt in a manner least oppressive to Camp, by an arrangement which would leave him in possession of the farm on which he resided. Camp was endeavoring to save something for his ward, to whom he was indebted, out of the wreck of his estate. By this transaction the remains of his personal estate was vested in a valuable property, for the use of his ward, and put out of the reach of other creditors, with the incidental advantage to himself of retaining a home to himself and family. He was not converting the property of his ward to his own use, or to pay his own debts by collusion with Brandon, but was applying his own personal property in the best manner he could, to secure his ward from loss. His death has prevented his good intentions from being fulfilled to the extent contemplated. It is not easy to perceive on what principle of equity or justice the complainant can invoke the aid of a court of chancery to rescind and annul this contract, and compel the defendant to refund the amount paid by Camp on it. It is true a guardian has no power to convert the personal property of his ward into realty. Nor is the ward bound to fulfil or perform the contract made with Brandon. He has a right to hold his guardian accountable for the balance due him, and repudiate the contract made for his use. Or he may elect to take the land bargained for, but cannot demand a title from Brandon without payment of the balance due on the contract.

In Alabama, and some others of the States, a guardian cannot sell even the personal property of his ward without the leave of the court. By the common law, and in those States where is has not been modified by statute, he is considered as having the legal power to sell or dispose of the personal property of his ward, and a purchaser who deals fairly has a right to presume that he acts for the benefit of his ward, and is not bound to in-

quire into the state of the trust, nor is he responsible for the faithful application of the money unless he knew, or had sufficient information at the time, that the guardian contemplated a breach of trust, and intended to misapply the money, or was in fact, by the transaction, applying it to his own private purpose. The cases on this subject are reviewed by Cancellor Kent in Field *v.* Schieffelin, 7 Johns. Chan. 150. In order to follow trust funds which have been transferred to third persons, there must be a breach of trust in their transfer, and a collusion by the purchaser or assignee with the guardian, executor, or trustee.

If Brandon had taken the negroes belonging to plaintiff from his guardian, in payment of his debt, knowing the guardian was insolvent, and abusing his trust, a court of equity would compel him to return them to the ward, or pay their full value. But, in the case before us, Camp was dealing with his own property, and there is no pretence of any collusion with him by Brandon in the abuse of his trust. He has received nothing which belonged to the ward, or which he is under any obligation to restore to him.

So far as the interest of the complainant were affected by this transaction, the object of it was to benefit, not to injure him. He may therefore assume the contract, and demand a specific execution of it from the defendant, but has shown no right to rescind it and recover the money advanced in execution of it.

The decree of the court below is therefore affirmed.

### Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the Northern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed, by this court, that the decree of the said District Court, in this cause, be, and the same is hereby affirmed, with costs.