SETH M. CARTER, Administrator,

*vs.*

MANUFACTURERS' NATIONAL BANK OF LEWISTON.

Androscoggin.    Opinion November 27, 1880.

*Executors ; powers of to procure loans and pledge the property of the estate.*

As a general rule, an executor has an absolute control over all the personal effects of his testator—his title being fiduciary and not beneficial.

An executor may pledge the personal property of his testator, for the general purposes of the will. If the person receiving a pledge from an executor has at the time knowledge or notice that the executor intends to misapply the money, or is, in the very transaction, applying it to his own private use, the pledge is not valid.

Where an executor pledged certain stock belonging to the estate to a bank to secure his note for money loaned in good faith by the bank, and upon the affirmation of the executor, that the money was wanted for the settlement of the estate, the pledge was valid.

ON REPORT.

This is an action brought by the plaintiff in his capacity as administrator *de bonis non*, with the will annexed, of the estate of Asa Redington, deceased, for the conversion of fifty shares of the capital stock of the Little Androscoggin Water Power Company.

It was admitted that the stock in question was the property of Asa Redington in his life time ; that John G. Cook was duly qualified as executor of the estate ; that Cook after his appointment and qualification had the stock transferred on the books of the company into the name of "John G. Cook, Executor ;" that Cook on the seventh day of September, 1876, made a loan from the defendant bank of $500, giving a note therefor ; that at the time of procuring said loan Cook transferred the fifty shares of stock to the bank as collateral security for the loan ; that Cook assumed to transfer the stock and make the loan in his capacity as executor ; that the money was loaned in good faith by the defendant, and upon the statement made by Cook that the same was wanted in the settlement of said estate of Asa Redington.

*Wm. P. Frye, John B. Cotton, Wallace H. White, Seth M. Carter,* for the plaintiff.

The note which Cook gave September seventh, had no validity against the estate, but was the personal and individual note of John G. Cook. *Davis* v. *French*, 20 Maine, 21; *Forster* v. *Fuller*, 6 Mass. 58.

When the officers of the bank made the loan and accepted the note, they knew it was a loan to John G. Cook individually, or were chargeable in law with such knowledge. An executor or administrator has no right to pledge any part of the trust estate to secure his own debt or the performance of his personal obligation. Perry on Trusts, vol. 1, § 225, and cases there cited.

An administrator or executor has no power of charging the effects in his hands to be administered by any contract originating with himself. The estate is to be subjected to no hazards or risks except those growing out of the transactions of the deceased. *Sumner, Adm'r,* v. *Williams et al.* 8 Mass. 199; *Lucht* v. *Behrens*, 22 American R. 383; *Austin* v. *Munroe*, 47 N. Y. 360.

The defendant having taken the stock without ascertaining, as it readily might have, whether Cook had authority to dispose of it in such a manner, it cannot now complain if it is held accountable to the parties for whose benefit Cook held it. *Ashton* v. *Atlantic Bank*, 3 Allen, 217.

*Ludden & Drew*, for the defendants, cited: 2 Redfield Wills, 290, 213, 214, 215; *Hicks* v. *Chapman*, 10 Allen, 463; *Moore* v. *Moore*, 127 Mass. 22; *Beecher* v. *Buckingham*, 18 Conn. 120; *Johnson* v. *Com. Bank*, 21 Conn. 156; *Valentine* v. *Jackson*, 9 Wend. 302; *Bank of Troy* v. *Holm*, 9 Wend. 273; *King* v. *Green*, 6 Allen, 139; *Myers* v. *Meinrath*, 101 Mass. 366; *Sampson* v. *Shaw*, 101 Mass. 145; *Hunt* v. *Nevers*, 15 Pick. 500.

VIRGIN, J. The main question is, whether the bank obtained a valid title to the shares of stock pledged to it by the executor as collateral security for the payment of his note.

The interest which an executor, as such, has in the personal estate of his testator is not the absolute title of an owner, else it might be levied on for his personal debts; but he holds in *auter*

*droit*—as the minister and dispenser of the goods of the dead. Wentw. Off. Ex. (14th ed.) 196; *Pinchon's Case*, 9 Coke, 86, *b; Dalton* v. *Dalton*, 51 Maine, 171; *Weeks* v. *Gibbs*, 9 Mass. 76; *Hutchins* v. *State Bank*, 12 Met. 423. As soon as he is clothed with a commission from the probate court, the executor is vested with the title to all the personal effects which the testator possessed at the instant of his decease; but the title is fiduciary and not beneficial, (*Peterson* v. *Chemical Bank*, 32 N. Y. 21,) and his office is not that of an agent, but of a trustee. *Dalton* v. *Dalton, supra; Sumner* v. *Williams*, 8 Mass. 198; *Shirley* v. *Healds*, 34 N. H. 407.

As a necessary incident to the execution of the will and the administration of the estate, the power to dispose of the personal estate is given to the executor. And no general proposition of law is better established than that an executor has an absolute control over all the personal effects of his testator. *Peterson* v. *Chemical Bank, supra;* 1 Williams Exr's, (6th Am. ed.) 709; 2 Williams Exr's, 998; 1 Perry Trusts, § 225, and cases in notes. And this rule prevails where no statute intervenes. R. S., c. 64, § 49.

While it is the duty of an executor to use reasonable diligence in converting assets into money for the general purposes of the will, the law permits him to exercise a sound discretion as to the time, within a limited period, when he will sell. And high authority has declared that circumstances may exist in which it is certainly not wrong in him, although it may not be a positive duty, to make advances for the benefit of the estate and reimburse himself therefrom. *Munroe* v. *Holmes*, 13 Allen, 110. If he may advance his own money for the general purposes of the will, and may sell the personal effects for the like object, it is difficult to see why, in the absence of any prohibitory provision in the will, he may not mortgage or pledge the assets for the same purpose, and the great weight of authority so holds. 2 Williams Exr's, 1001, and cases cited. *McLeod* v. *Drummond*, 17 Ves. 154; *Andrew* v. *Wrigley*, 4 Br. Ch. Cas. 125. In *Earle Vane* v. *Rigden*, (L. R.) 5 Ch. App. Cas. 663, Lord HATHERLY said: "Lord THURLOW expressed his opinion clearly to be that the

executor is at liberty either to sell or pledge the assets of the testator. *Scott* v. *Tyler*, 2 Dick. 712, 725. In fact he has complete and absolute control over the property, and it is for the safety of manhood that it should be so; and nothing which he does can be disputed, except on the ground of fraud or collusion between him and the creditor." And Sir W. M. JAMES, in the same case, said: "It seems to be settled on principle, as well as by authority, that an executor has full right to mortgage as well as sell; and it would be inconvenient and very disastrous if the executor were obliged immediately to convert into money by sale every part of the assets. It is a very common practice for an executor to obtain an advance from a banker for the immediate wants of the estate by depositing securities. It would be a strange thing if that could not be done." See also, 3 Redf. Wills, c. 8, § 32, pl. 4 *et seq.*

In considering the question whether an executor had followed a specific power in a will, Ch. BUCHNER made the general remark: "It is certain that an executor, as such, has no power to pledge the estate of his testator for a loan of money." *Ford* v. *Russell*, 1 Freem. (Miss.) Eq. 42. If the learned chancellor meant that an executor has no authority to pledge the assets of his testator for a contemporaneous advance of money for the use of the estate—for a purpose connected with the administration of the assets, he is not sustained by the great current of modern authority. 1 Perry Trusts, 270, and cases there cited, and cases *supra*.

Although the general proposition mentioned is so well established, nevertheless like most others, it is not without an exception. For while it is of the greatest importance that the disposal of a testator's effects should be made reasonably safe to the purchaser, still it is the bounden duty of the executor to faithfully appropriate the assets to the due execution of the will; and a misapplication thereof is a breach of duty for which he is liable. And all the authorities concur in holding that if the purchaser, mortgagee or pledgee know or have notice, that the transfer to him is made for the purpose of misapplying the assets, his title cannot be upheld, and he thereby becomes involved and

is made liable to all persons beneficially interested in the will, except the executor.   2 Williams Exr's, 1002, and cases in note (x).   1 Perry Trusts, 270, and cases in note 1 ; 1 Story Eq. § § 400, 402 and cases;  *McLeod* v. *Drummond*, 17 Ves. 153, where the cases are critically reviewed by Lord Elden.  *Collinson* v. *Lister*, 7 De G. M. and G. 633.   *Gerger* v. *Jones*, 16 How. 30, 37, 38 ; *Hutchins* v. *State Bank, supra.*

It also now seems to be well settled in equity at least, that an executor can make no valid sale or pledge of his testator's effects for the payment or security of his own private debt (2 Sugd. Vend. 372, and cases in note *o*) ; 1 Perry Trusts, 270, and cases in note 3 ; 2 Williams Exr's, 1004, and cases in note *d;* on the ground *res ipsa loquitur*, giving the purchaser, mortgagee or pledgee such notice of the misapplication as necessarily to involve him in the breach of duty.

Chancellor Kent concludes a critical examination of the cases which had then been decided as follows :   "I have thus looked pretty fully into the decisions of a purchaser from an executor of the testator's assets and they all agree in this : that the purchaser is safe, if he is no party to any fraud in the executor and has no knowledge or proof that the executor intended to misapply the proceeds, or was in fact by the very transaction, applying them to the extinguishment of his own private debt.   The great difficulty has been, to determine how far the purchaser dealt at his peril, when he knew from the very face of the proceeding that the executor was applying the assets to his own private purposes, as the payment of his own debt. The later and better doctrine is, that in such a case, he does buy at his peril ; but that if he has no such proof or knowledge, he is not bound to inquire into the state of the trust, because he has no means to support the inquiry and he may safely repose on the general presumption that the executor is in the due execution of his trust."   *Field* v. *Schieffelin*, 7 Johns. Ch. 150, 160.

So Ch. J. Taney said : "An executor may sell or raise money on the property of the deceased, in the regular execution of his duty ; and the party dealing with him is not bound to inquire into his object, nor liable for his misapplication of the money.

. . But it is equally clear, that if a party dealing with an executor, has at the time, reasonable ground for believing that he intends to misapply the money, or is, in the very transaction, applying it to his own private use, the party so dealing is responsible to the persons injured." *Lowry* v. *Com. & Farm. Bank*, Taney's C. C. 310, 330.

The law recognizes a distinction between an ordinary trustee and an executor. The former has possession for custody and the latter for administration. The latter has a necessary incidental power of disposal which the former does not. And as a consequence when one purchases of the latter stocks or other securities bearing on their face the revelation of a trust, he may do so safely in the absence of notice or knowledge of any intended breach of trust on the part of the executor; but if he purchase like trust property of an ordinary trustee, the law imposes upon him the duty of inquiring into the right of the trustee to change the securities. *Duncan* v. *Jaudon*, 15 Wall. 165, 175; *Shaw* v. *Spencer*, 100 Mass. 388; *Pendleton* v. *Fay*, 2 Paige, Ch. 205; *Atkinson* v. *Atkinson*, 8 Allen, 15; 1 Perry Trusts, § 225, p. 271.

In the case at bar the certificate of stock was changed by the corporation and issued to Cook, executor, thus revealing to the bank the trust. But this alone would not imperil the bank in the transaction, for the executor had the presumptive right to sell or pledge the stock. But the executor gave to the bank his note for the security of which the pledge was made. The note could not be collected against the estate for it was the personal note of the executor. *Davis* v. *French*, 20 Maine, 21. He could not create a debt in that manner against the estate. And if the money was thereby procured for his own private use and the bank knew it at the time, the transfer of the stock would be a *devastavit* and could not be upheld. If the note had been given to the bank for a private debt due to the bank from the executor, created before or during his executorship, but independent thereof, it would come within the principle of the numerous cases before cited where the transaction itself would speak and conclude the bank. But if given as a voucher for money

obtained for a legitimate purpose connected with a *bona fide* administration of the will, then though the executor alone was made liable for its payment, the transaction would be legitimate and the estate would have no reason for complaint. The case finds "that the money was loaned in good faith by the bank and upon the statement made by Cook that the same was wanted in the settlement of the estate." The presumption is that he was acting faithfully. There is no evidence to the contrary and the presumption must stand. The doctrine of this case is recognized in *Pettingill* v. *Pettingill*, 60 Maine, 412, 425.

*Plaintiff nonsuit.*

APPLETON, C. J., WALTON, BARROWS, LIBBEY and SYMONDS, JJ., concurred.

NOTE. — To the same purport see *Smith* v. *Ayer*, 101 U. S. 320, decided since the foregoing opinion was announced. REPORTER.