Burket, J.
Plaintiff below, defendant in error here, complains in his motion for a new *510 trial, because the court failed to state in its findings of fact, that Charles A. Kebler, administrator, did not in any manner deliver or indorse the notes in question to the two trustees, and further, because the court failed to state that said administrator had not accounted for the proceeds of said notes.
The bill of exceptions contains all the testimony, which is mostly documentary, and taking the testimony together, there is no conflict, and nothing to require any weighing of testimony. :
In view of all the testimony the admissions in the pleadings and the facts so far as found by the court, it clearly appears that Mr. Kebler held these notes as administrator until he sold them to the plaintiff in error in March, 1887, and that he failed to account for the proceeds of the notes and mortgage. So that in the disposition of the ease these two facts will be regarded as established, as claimed by the defendant in error.
As to the claim of the plaintiff in error, that an administrator can not maintain an action for the recovery of assets of the estate which have illegally passed into the-hands of third persons from the former administrator, it is enough to say that the statutes have been materially changed since the case of McCoy v. Gilmore, 7 Ohio Rep., 268, and that now an administrator de bonis non has the right to maintain an action for the recovery of the assets of the estate, wherever the same may be found. Sections 6020 and 6214, Revised Statutes. Curtis v. Lynch, 19 Ohio St., 392; Tracy v. Card, 2 Ohio St., 431.
It is claimed by plaintiff in error, that by virtue of the decree in the court of common pleas, referred to in the findings of fact in this case, that *511 the title to the notes passed from the administrator, Kebler, and became vested in the two trustees named in said decree. It is further claimed by plaintiff in error, that the sale of the notes by the administrator to Mr. Jelke was valid, and vested title in him. Both of these claims may be false, but both cannot be true; because if title vested in the trustees by virtue of the decree, no title remained in the administrator to be by him transmitted to Mr. Jelke.
No indorsement of the notes was made by the administrator to the trustees, and no delivery was made to them, either actual or constructive. Mr. Kebler held the notes and mortgage until March, 1887, and then indorsed the notes and assigned the mortgage, as administrator of the estate of James Robb, and sold and delivered them to Mr. Jelke, thus showing that he treated the notes and mortgage as being held by him in his capacity of administrator.
The whole record is consistent with this construction put upon the transaction by Mr. Kebler at the time of its occurrence, and there is nothing against it, unless it be a strained construction of the effect of the decree in the common pleas.
If it be true as found by the court, that on the 11th day of March, 1887, the administrator indorsed, sold and delivered the notes to Mr. Jelke, it must be also true, that at that date the title and possession of the notes still remained in him, as he could not sell and deliver that which he had not. If he then had the title and possession the same could not have been transferred to the trustees by virtue of the decree of February, 1885, unless they had in the meantime been retransferred to thp administrator by the trustees, which is not claimed, *512 and of which there is no evidence whatever in the record.
The irresistible conclusion is, that the title and possession remained in the administrator, until March 11, 1887.
That the title did so remain in the administrator, appears from this further consideration. At common law a decree acts in personam, and creates a right which may be enforced against the person by attachment and sequestration, but the decree does not execute itself. By statute in this state at an early day, it was provided the same as is now contained in section 5318, Revised Statutes, which reads as follows: “When the party against whom a judgment for a conveyance, release, or acquittance is rendered, does not comply therewith by the time appointed, such judgment shall have the same operation and effect, and be as available as if the conveyance, release, or acquittance had been executed conformably to such judgment. ”
It is by virtue of this statute that the decree of a court of equity is made, by its own vigor and operation, to transfer title to real estate from one party to another. In the absence of such statute, .this court held in Shepherd v. Commissioners of Ross County, 7 Ohio, 271, that a decree did not operate to transfer title to real estate.
It will be noticed that this statute applies only to decrees as to title to real estate, but decrees as to personalty are left as at common law, aided, however, by our remedial statutes, and section 5490, which provides as follows: “When the judgment .is not for the recovery of money or real property, it may be enforced by attachment, by the court which rendered the same, upon motion *513 made, or by a rule of court upon the defendant; but in either case notice of the motion, or ■ a service of a copy of the rule, shall be made on the defendant a reasonable time before the order of attachment is made. ’ ’
Under this section, the most that can be claimed in this case is, that the trustees could have, compelled the administrator, by attachment, to deliver the notes and mortgage in question; but until such delivery, the title to the notes and mortgage remained in the administrator.
That a decree in chancery, unaided by statute, is in personam only, and does not execute itself so as to transfer personalty, is also shown by the following citations: Mitchell v. Bunch, 2 Paige, 606; Mead v. Merritt, 2 Paige, 402; Great Falls Mfg. Co. v. Worster, 23 Foster, 462; Wood v. Warner, 15 N. J. Eq., 81; 2 Daniels Chancery Pleadings & Practice, 1032; 1 Spence’s Equitable Jurisdiction, 391; 1 Equity Cases, Abridged, 130.
Let us next examine the claim of plaintiff in error, that the sale of the notes and mortgage by the administrator to Mr. Jelke, is valid and vested title in him.
The common law, as to powers of executors and administrators is in force in this state, except as modified by statute. O'Connor v. State, 18 Ohio, 225; Tracy v. Card, 2 Ohio St., 431; Curtis v. Lynch, 19 Ohio St., 392.
At common law an executor or administrator, has full power and authority to sell, and dispose of all the assets of the estate, including notes, accounts, bonds, mortgages and leases, without an order of court, when the sale is in good faith, and for purposes of the estate; and in such case the purchaser is not required to see to the proper *514 application of the purchase money. Even though the-sale on part of the executor or administrator is in bad faith, and with the intent and for the purpose of converting the proceeds of the sale to his own use, the purchaser will be protected in his purchase in case he acts in good faith and without notice of the bad faith and wrongful intention of the executor or administrator. A sale by an executor or administrator in payment of, or as security for, his own debt, is sufficient notice to the purchaser, that the transaction is not for the benefit of the estate, but for the executor or administrator individually, and such a transaction is always held collusive and fraudulent. 7 Am. & Eng. Enc. of Law, 288 to 299, and notes. 2 Williams on Executors, 7th Am. Ed. 132, notes; Carter v. Mfg. Bank, 71 Me. 448; Duncan v. Jaudon, 15 Wallace, U. S., 165; Field v. Schieffelin, 7 Johns, Ch. 150; Smith v. Ayer, 101 U. S., 320.
In this last case, which involved the right of the executor to pledge notes which came into his possession as executor, the court, on pag’es 326 and 327, say: ‘‘There is no doubt that, unless- restrained by statute, an executor can dispose of the personal assets of his testator by sale or pledge for all purposes connected with the discharge of his duties under the will. And even where the sale or pledge is made for other purposes, of which the purchaser or pledgee has no knowledge or notice, but takes the property in good faith, the transaction will be sustained; for the purchaser or pledgee is not bound to see to the disposition of the proceeds received. But the case is otherwise where the purchaser or pledgee has knowledge of the perversion of the property to other purposes *515 than those of the estate, or the intended perversion of the proceeds.”
The case of Duncan v. Jaudon, 15 Wallace, 165, cited above was a ease involving’ the rig’ht of a trustee to pledge stock (held by him in trust) as collateral security for a loan to himself for his own purposes. The right was denied. The court on page 175 say: “The party taking such stock on pledge deals with it at his peril, for there is no presumption of a right to sell it, as there is in the ease of an executor. In the former case the property is held for custody, in the latter for administration.”
In the case of Field v. Schieffelin, 7 Johns. Ch. 150, which was a ease involving the right of a guardian of a minor to sell a note and mortgage which came into his possession as guardian, and payable to him as such, the syllabus is as follows: “A guardian, having the legal power to sell or dispose of the personal estate of his ward, in any manner he may think most conducive to the purposes of his trust, a purchaser who deals fairly, has a right to presume that he acts for the benefit of his ward, and is not bound to inquire into the state of the trust; nor is he responsible for the faithful application of the money, unless he knew, or had sufficient information at the time, that the guardian contemplated a breach of trust, and intended to misapply the money; or was, in fact, by the very transaction, applying it to his own private purpose. ’ ’
The chancellor, after reviewing the then cases on the subject, on page 160, says: “I have thus looked pretty fully into the decisions in the analogous case of a purchase from an executor of the testator ’ s assets; and they al 1 agree in this, that the *516 purchaser is safe, if he is no party to any fraud in the executor, and has no knowledge or proof that the executor intended to misapply the proceeds, or was in fact by the very transaction applying them to the extinguishing of his own private debt. ’ ’
The case of Strong v. Strauss, 40 Ohio St., 87, is cited and relied upon by defendant in error. In that case a guardian sold notes made payable to himself as such guardian. The syllabus is as follows: “One who buys such notes bearing on their face the marks of a trust fund, is put upon inquiry; and if he buys them from the guardian, under circumstances fairly indicating that they were sold against the interests of his wards, he gets no title from the guardian who misappropriates the proceeds of the sale. ’ ’
It appears in the opinion of the court and facts of the case, that the notes were sold long before maturity, for less than their face value, and under a statute of this state authorizing a sale only, “when for the interest of the ward.” The guardian acted in bad faith and sold the notes for purposes of his own, and not for the benefit of the wards. The court finds that the defendant at the time he bought the notes had sufficient warning to put him upon- inquiry. The case therefore falls within the class of eases in which both seller and purchaser acted in bad faith, and in such cases the sale is always held invalid and collusive. In addition 'the power of' a g-uardian was limited by statute to sales, “when for the interest of the ward.” Of - this statute the purchaser was bound to take notice, and see to the proper application of the money paid for 'the notes. The case is therefore not in conflict with' the cases which hold that, at common law, such sales may be made when the *517 purchaser acts in good faith without notice, but falls within the class of cases where there is bad faith, or a limitation of the power of sale by statute. Even in that case it is conceded that a sale in all respects fair would be valid, but that the purchaser would be bound to exercise a high degree of caution in purchasing notes representing trust funds.
Therefore, and in view of the unbroken line of authorities, the power and right of an executor or administrator, at common law, to sell the securities of the estate, cannot be questioned.
How stood the law on this subject, in this state, at the time of the sale of the notes in question ?
Under our statutes, an executor or administrator may sell the personal property of the estate at public sale without an order of court. Section 6076, Revised Statutes.
By section 6074, the power of an executor or administrator to sell promissory notes, claims, demands, rights of action, bonds and stocks belonging to the decedent at his death, is taken away, except as to sale of desperate claims, and bonds and stocks necessary to be sold to pay debts, as provided in sections 6077, and 6080, Revised Statutes.
Until the amendment of section 6162, February 18,1891, 88 Ohio Laws, 41, and which was further amended, 89 Ohio Laws, 148, regulating and restricting the sale of notes taken by an executor or administrator for real estate sold by him, there was no statute in this state in any manner abridging the power of an executor or administrator to sell notes taken by him in the course of his administration of the estate, and payable to himself in his representative capacity; and therefore his *518 powers of sale, as- to such notes, were as ample as at common law, until February 18, 1891, when section 6162 was amended as above stated.
There was, therefore, no want of power in the administrator, Kebler, on March 11, 1887, to sell the notes in question in good faith for the purpose of the estate, or in bad faith for purposes of his own, provided the purchaser acted in good faith and without notice or knowledge of the bad faith and wrongful purposes of the administrator.
The petition avers that the' sale of the notes by the administrator, was in fraud of the rights of creditors and distributees, and for purposes of his own; but there is no averment that Mr. Jelke had notice or knowledge thereof, or in any way acted in bad faith. Neither do the facts found by the court, in any way implicate Mr. Jelke in the wrongs charged against the administrator, and there is no testimony in the bill of exceptions, from which notice or knowledge could be inferred. On the contrary, the utmost good faith on part of Mr/ Jelke is conceded. He paid the full face of the notes, and interest after their maturity, before there were any suspicions against the administrator ; and at that time, the transaction seemed to be to the advantage of the estate, as it served to realize the full amount of the notes, without the trouble and expense of a foreclosure of the mortgage, or collection of the notes. Mr. Jelke, therefore, by his purchase, acquired a good and indefensable title to the notes and mortgage in question. The transaction as to the purchaser of the notes, should be viewed as it appeared at its date, and not as it may appear years thereafter, when others, whose sins cannot be charged against him, have gone wrong.
*519 To compel Mr. Jelke to surrender the notes and mortgage to the same estate from which he purchased them in g-ood faith, and for full value, without returning to him his purchase money, would certainly be unconscionable, if not absolutely dishonest.
Inasmuch as the petition fails to charge bad faith on part of the purchaser, or notice to him of bad faith on the part of the administrator in the sale of the notes and mortgage, it fails to state a cause of action against the purchaser; and a judgment founded upon such petition should be reversed, and a general demurrer to the petition should have been filed and sustained.
The conclusion is, that the judgment at special term in favor of defendant below, is right, not on the ground that the title to the notes and mortgage had vested in the trustees, but on the ground that the title had vested in Mr. Jelke.
With these views, it follows that the motions to make new parties were properly overruled, and that the judgment of the general term, reversing the judgment of the special term, should be reversed, and the judgment of the special term affirmed.

Judgment accordingly.