ALBERT H. MCAUSLAN *et al vs.* UNION TRUST COMPANY.

JULY 10, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J. This is a bill in equity brought by beneficiaries under a trust created by the will of John McAuslan, late of Providence, deceased, to set aside a mortgage or pledge of 1,250 shares of the capital stock of the Boston Store Land Company, made by the executors, and the trustees named in said trust, to the respondent, the Manufacturers Trust Company. This pledge was later transferred to the respondent, the Union Trust Company. The pledge was given to secure the repayment of a loan of $100,000 made by the Manufacturers Trust Company to the executors and trustees. The complainants seek to recover 1,125 shares of said stock now held by the Union Trust Company and also to recover so much of the dividends upon said shares as have been collected and retained by either of the respondent trust companies, and also the interest upon the sums so retained. The balance of the loan for which the Union Trust Company now holds said 1,125 shares is $90,000.

In the Superior Court the cause was referred to a master to hear and report to the court the evidence, his rulings, and his findings upon the evidence. Among other things and principally, he was directed to report as to whether the mortgage or pledge of said shares of stock was valid against the complainants for the full amount claimed by the respondent trust companies, and if not valid for the full amount whether the respondent trust companies, or either of them, are entitled to any part of said shares as security for the repayment of any lesser amount.

The master reported to the court his finding that the respondent, the Union Trust Company, has the right to hold the shares until said company is repaid all of the credits, except $30,000, which the master found arose from loans made by the Manufacturers Trust Company to the trustees before the pledge of the shares of stock.

The case was heard before a justice of the Superior Court upon the exceptions to the master's report filed by both the complainants and the respondents. The justice entered a

decree confirming the master's report, save as to his finding that all of said credit of $30,000 in favor of the respondent Union Trust Company arose from loans made by the Manufacturers Trust Company before receiving the pledge of said stock. The decree modified the master's report by adjudging that only $22,000 of said $30,000 was not a loan made by the Manufacturers Trust Company in reliance upon said pledge.

The cause is before us upon the appeal of the complainants and also upon the appeal of the respondent trust companies from the entry of said decree.

John McAuslan died January 15, 1896. His will was duly probated, and his widow, Amelia B. McAuslan, and his son, George R. McAuslan, were appointed joint executors February 14, 1896. They duly qualified, and first advertised their qualification on February 26, 1896. The estate was inventoried at approximately $800,000 and the testator's debts were somewhat in excess of $200,000. The widow and the son George were also named by the testator as trustees of the residuary estate. The trust in the residuary was to continue during the life of the widow. The trustees were authorized in their discretion to allow any capital of the trust which the testator had in any co-partnership or business to remain in such business, to sell any of the trust estate, and to reinvest the proceeds, and to pay to the widow one third of the net income and to distribute the remaining two-thirds of net income equally for the support, education, and advancement of all the testator's children. On the death of the widow the estate was to be distributed equally between the surviving children of the testator and the issue of deceased children, taking by way of representation.

The finding of the master is warranted that, after qualifying as executors, the widow and George took the general management of the estate, did not distinguish between principal and income of the funds coming to their hands nor between their duties as executors and as trustees. In 1900, the trustees became embarrassed by the frequent maturity of the different obligations of the testator, and those of

themselves as trustees. For the avowed purpose of paying the debts of the testator, and those which they had substituted therefor, the executors and trustees obtained a loan of $100,000 from the Manufacturers Trust Company, and transferred to the trust company 1,250 shares of stock of the Boston Store Land Company as security for the loan. No note was given to the trust company and the transaction took the form of a sale of the stock, with an option of repurchase at a fixed price. Although in this form the contention has never been made by the respondents that the stock was not held by the Manufacturers Trust Company and by its successor, the Union Trust Company, as security for the repayment of the loan. The certificates of stock issued in the name of the Manufacturers Trust Company were dated April 11, 1900, and were received by the trust company on that day. Thereafter the trust company made loans to the trustees as follows: On April 18, 1900, $40,000; on April 24, 1900, $40,000, and on June 1, 1900, $30,000. On March 1, 1901, $10,000 was paid back to the Manufacturers Trust Company and certificates for one hundred and twenty-five of the pledged shares were returned to the borrowers. On April 13, 1903, a further credit of $10,000 was given by the trust company, and one hundred and twenty-five shares were pledged in the same manner as the prior pledge had been made. On February 1, 1908, $10,000 was paid to the Union Trust Company, the present holder of the pledged stock, and one hundred and twenty-five shares of stock were re-transferred. Eleven hundred and twenty-five shares of stock were held by the Union Trust Company at the time of the filing of this bill, and the balance of the indebtedness claimed was $90,000.

The contention of the complainants is that the pledge of assets of the estate was invalid on the ground that, if made by the widow and George as executors, it was after the debts of the testator had been extinguished by the two year limitation of the statute of non-claim, and if made by them as trustees, authority to pledge assets of the trust estate had

not been given to the trustees by the terms of the will. The complainants further contend that the respondent trust companies were warned of these circumstances, or should have been warned by the exercise of reasonable diligence on their part, and must be held to have had notice that the executors and trustees at the time of the loan and pledge were without legal authority to borrow money and pledge the assets of the estate, for the payment of debts.

The complainants cite *Atwood* v. *R. I. Agr. Bank*, 2 R. I. 196, and the Rhode Island cases following that, to the effect that the statute of non-claim is not created for the security and benefit of executors and administrators but for the benefit of the estate and those beneficially interested therein.

In so far as the provisions of the statute of non-claim are for the benefit of these complainants the provisions may be waived by them. This has been recognized in *Jastram* v. *McAuslan*, 26 R. I. 320. In our opinion the conduct and acquiescence of these complainants amount to a waiver of the statute. The estate has been before the courts in former proceedings in which some or all of these complainants have been parties. In those proceedings decrees have been entered, without objection on the part of any of these complainants, containing provisions not in accord with their present contention: that the unpaid debts of the testator had been extinguished before the date of the pledge here in question.

The evidence warranted the master's finding that "some of the obligations on which John McAuslan was liable were paid by the executors, some were renewed by merely substituting the obligations of the executors for those of the testator or for those on which he was liable, and in other cases the executors borrowed money at various banks and in some cases from individuals and gave their own, or more likely, paper signed 'Estate of John McAuslan, George R. McAuslan, Exr.,' for the obligations incurred by the borrowers, and with such borrowings paid the testator's obligations or their own contracted as aforesaid." We find

from the evidence and the inferences reasonably to be drawn from the circumstances, that these acts of the executors and trustees were within the knowledge of the complainants, and so far as this conduct related to and was aimed at the final liquidation of the debts of John McAuslan they were acquiesced in and assented to by these complainants and were recognized by them as valid proceedings on the part of the executors and trustees.

The master found from the evidence before him that there had been a family arrangement made soon after the death of the testator. To carry out that arrangement a longer period for the payment of the extensive indebtedness of John McAuslan would be required than that limited in the statute of non-claim; it would also necessitate the substitution of new obligations to replace the notes and other obligations of the testator; and for its accomplishment the assent of creditors would be needed. It is urged that this family arrangement, if it took place, should be given no effect because some of these complainants who participated in it were then in their minority. Their subsequent conduct, however, after reaching majority and up to the time of the commencement of this suit, is only consistent with the general recognition of and acquiescence in such an existing arrangement by all members of the family.

On October 1, 1899, more than three years and seven months after the first advertisement of the qualification of the executors, all of these complainants, except the infant complainant Arthur L. McAuslan, joined in making a note to the Rhode Island National Bank for $12,500. This note was given either as collateral security for notes of John McAuslan held by the bank or as a note in substitution for such notes. On the same day the same complainants made another note to the Rhode Island National Bank for $17,500 as collateral security or in substitution for other indebtedness of John McAuslan to the bank, in connection with the Chemnitz Company, in which the testator had been interested in his lifetime. Whether in substitution or as

collateral security for the obligations of John McAuslan, the making of these notes indicates a recognition by the complainants that the debts of John McAuslan had not been extinguished at that time.

In *Jastram* v. *McAuslan*, 26 R. I. 320, decided in 1904, three of these complainants and the trustees were respondents. The respondents there raised no question as to the obligations of the estate at that time upon the unpaid debts of John McAuslan. It appears that the complainant in that case had stated in his brief that creditors were barred, but the court understood him to mean; barred against the executors but not against the trustees; and on that understanding it was declared that the complainant there was entitled to an accounting. In the same case in the Superior Court on November 11, 1904, a decree was entered in which the indebtedness of John McAuslan remaining unpaid November 11, 1904, was recognized as a subsisting obligation of the estate. The cause was sent to a master, among other things, to take an account of all the indebtedness of the testator remaining unpaid at the time of the closing of the testimony. No objection, in that regard, was made by the respondents in the case to the decree or to the report of the master.

In the case of *McAuslan* v. *McAuslan*, in the Superior Court, these complainants were asking for an accounting from the trustees, and on April 2, 1910, the cause was sent to a master. In his report he finds as one of the liabilities of the estate a note of John McAuslan to Fannie A. McAuslan for $4,800. In connection with this note it appears in the testimony given in this case by the present trustee, one of these complainants, that the note is recognized as a valid claim against the estate. In his report the master in *McAuslan* v. *McAuslan* calls attention to the acts of counsel for these complainants as a special master to sell certain assets of the estate. From the proceeds of that sale he made payment to the Howard National Bank on the balance due upon one of the borrowings of the trustees. No objections

**184**

nor exceptions were taken by the complainants to this report of the master, and in the Superior Court the complainants moved for its confirmation.

From the foregoing circumstances we find an assent and acquiescence on the part of the complainants that the unpaid debts of John McAuslan should remain as valid obligations of the estate, unaffected by the provisions of the statute of non-claim. This is the particular matter now under consideration. We also find an assent to and an approval and adoption by the complainants of the acts of the executors and trustees in substituting their obligations for those of the testator, and in borrowing money to meet the obligations of the testator and their own given in substitution for his. In so far as those acts of the executors and trustees had for their purpose the cancelling of the testator's indebtedness they are binding upon the estate and upon these complainants.

In the view which we have taken as to the continued validity against the estate of the unpaid debts of John Mc-Auslan at the time the stock was pledged, it makes little, if any, practical difference to the complainants, in the other circumstances of the estate, whether the pledgors were acting in their capacity as executors or as trustees. Some slight question is raised by the complainants as to the power of any executor to pledge assets of an estate for the purpose of paying debts, as the Rhode Island law existed at that time. The authority can be taken as well established in this country that unless restrained by statute an executor or administrator may make a pledge of the assets for the payment of debts and the other purposes of the estate. No statute regulating this matter existed in Rhode Island at the time of the pledge. I Perry on Trusts, Sec. 225; *Carter* v. *National Bank*, 71 Me. 448. A person, acting in good faith, who advances money to an executor for the purpose of enabling him to pay the debts of the estate and takes a pledge of assets of the estate as collateral security for the advance, receives a valid title to the assets as pledgee and

is not bound to see to the proper application of the money advanced. *Smith* v. *Ayer*, 101 U. S. 320, at p. 326; *Goodwin* v. *American National Bank*, 48 Conn. 550; *Crocker* v. *Old Colony R. R.* 137 Mass. 417; *Hemmy* v. *Hawkins*, 102 Wis. 56.

The master found that the pledge was made by the pledgors, acting as trustees. We think a finding is warranted that, not through a formal transfer, but as the result of their conduct of the estate the trustees had taken over the assets of the estate from themselves as executors with the indebtedness of the estate outstanding, and that at the time of the pledge they held the assets of the estate charged with the payment of the debts and expenses of administration. In *Jastram* v. *McAuslan*, 26 R. I. 320, the court held that if such an arrangement existed, as in this case we find did exist, then the trustees took the estate "*cum onere*, since the result to the *cestuis que trust* would be the same whether debts had been paid by the respondents as executors or trustees, and it would be grossly inequitable to allow the *cestuis* to profit by a forbearance to bring a suit, for which they were in part responsible either by agreement or acquiescence." These complainants suggest that this ruling is inapplicable now as it appears that the *cestuis* have not profited. The general result of the management of the estate by the trustees may not have been profitable to the complainants. Whether they were benefited by an extension of time for the payment of debts we cannot determine; but against these respondents the complainants cannot be permitted to repudiate their former arrangement and acquiescence on the ground that it has not in all respects resulted as advantageously for them as they had expected.

In *McAuslan* v. *McAuslan* in the Superior Court the master found that the executors never dealt with the property as executors but took possession of it and handled it in their capacity as trustees.

Taking the property as trustees and holding it charged with the payment of the indebtedness of the estate and the expenses of administration, the trustees must be held to

have the authority necessary to carry out the additional trusts which in the circumstances had arisen when the property of the testator came into their hands thus burdened. In order to first relieve the property of the charge upon it, that they might then proceed to execute the trusts contained in the will, they had the implied power of executors to make a pledge of assets for the purpose of paying the debts charged upon the trust-property in their hands. Such action comes within the application of the principle upon which the court based its determination in *Tillinghast* v. *Coggeshall*, 7 R. I. 383. To the same effect is the decision in *Ball* v. *Harris*, 4 My. & Cr. 264, not as to the principle that the "power to sell implies a power to mortgage" but that a trustee who holds the trust estate charged with the payments of the testator's debts, must have the powers necessary to execute such trust. We hold, further, that the respondent, Manufacturers Trust Company, which we find acted in good faith, was not bound to see to the application of the money loaned on the pledge.

Question has been raised whether all of the first advance of $40,000 made by the Manufacturers Trust Company on April 18, 1900, should be regarded as secured by the pledge of stock, or only $10,000 of that amount. This question has been raised because of the circumstance that after said $40,000 had been placed to their credit in their bank account with said trust company, the trustees, on the same day, gave to the Manufacturers Trust Company a check for $30,000 to repay loans formerly made by the trust company to the trustees, and for which the trust company held the notes of the trustees. It appears that on February 9, 1900, the trustees opened an account with the Manufacturers Trust Company in which they made deposits of various sums which came to them in connection with the estate, and also the net amount of three loans from the Manufacturers Trust Company, one on March 19, 1900, for $12,000, one on March 26, 1900, for $10,000, and one on April 13, 1900, for $8,000. The claim of the complainants is that in any view

of the transaction $30,000 of the first advance upon the pledge was used to liquidate this prior indebtedness and the transfer of stock in so far as it attempted to secure the bank for said advance of $30,000 was invalid.

The justice in the Superior Court has held that the loan from the trust company to the trustees of $8,000 on April 13, 1900, was made after the transfer of stock upon the pledge made on April 11, 1900, was in contemplation of and on the faith of that transfer, and that the pledge was valid as to that amount. We are of the opinion that it was valid as to the entire amount of the first advance.

The complainants' contention is that as to the $30,000 the pledge was collateral security for a preëxisting indebtedness and the trust company did not have the rights of a purchaser for a valuable consideration.

There is no evidence in the case of an agreement between the trustees and the trust company by which the trustees were bound to repay either $30,000 or $22,000 of past indebtedness from the money advanced on the pledge. The whole amount of $40,000 of the first advance was credited to the trustees, in circumstances which made the pledge a valid security therefor. As far as appears the trustees were free to use it for any purpose of the estate and the trust company was not bound to follow its use. The voluntary payment by the trustees of $22,000 from the first installment of the loan and the acceptance of such payment by the trust company should not affect the security of the pledge for the $40,000 in the absence of circumstances, connected with the previous loans, which should have aroused the suspicion of the trust company that such advances had been used by the trustees for a purpose in fraud of the estate or otherwise than for the benefit of the estate. No claim is made that any of the previous indebtedness was used by the trustees for their own purposes.

It may well be found that no portion of the pledge of stock connected with the first credit of $40,000 was given to secure a past indebtedness to the trust company. If, how-

ever, the contrary view had been taken, in the circumstances the trust company should be regarded as a purchaser for value. We regard that as an equitable conclusion. In Perry on Trusts, § 225, it is stated that if " an administrator makes a pledge of the assets for a contemporaneous advance of money for the use of the estate it will be held to be a valid transaction or if the sale or pledge or mortgage is afterwards made for a previous advance made in good faith for the alleged benefit of the estate it will be valid." In this the author is supported by the case of *Miles* v. *Durnford*, 2 De G. M. & G. 641. In our opinion, however, it is not necessary to resort to that authority to sustain the pledge upon all the shares of stock.

Upon receiving the check for $30,000 the trust company surrendered to the trustees the notes which they held for the past indebtedness. All other promissory notes given to banks and trust companies representing borrowings of the trustees have been paid by the estate and such notes as the trust company delivered up to the trustees may well be considered as valuable securities. These notes to secure the prior credits were extinguished, the time of payment was extended, and a new advance of at least $10,000, of the first credit secured by the pledge, was given to the borrowers. The authorities amply sustain the view that in these circumstances the pledgee becomes a purchaser for value of the property pledged to the extent of the antecedent debt as well as for the new advance. *Entin* v. *Evans*, 235 Mass. 43; *Gurley* v. *Reed*, 190 Mass. 509; *Douredoure* v. *Humbert*, 85 N. J. Eq. 89; *Adam &c Co.* v. *Stewart*, 157 Ind. 678; *Franklin Savings Bank* v. *Taylor*, 53 Fed. 854.

In *McAuslan* v. *McAuslan* in the Superior Court the master was directed, among other things, to report the indebtedness of the estate at the time of the appointment of the receiver February 17, 1910, and also the indebtedness of the trustees to the estate. The master's determination as to the indebtedness of the trustees would involve, among other things, his finding as to whether

the $90,000 now in question and the other borrowings of the trustees constituted obligations of the estate or of the trustees. From the evidence produced before him by the complainants the master assumed and ruled for the purpose of his report that the borrowings of the trustees were liabilities of the estate. Among these liabilities of the estate he includes the whole of $90,000 borrowed from the Manufacturers Trust Company. It is upon the basis of such assumption that he determined the amount of indebtedness from the trustees to the estate. This report of the master, as we have stated above, was not the subject of exception by these complainants, on their motion it was confirmed in the Superior Court and a decree was entered in their favor in which they are adjudged to be entitled to receive from the trustees all the proceeds of the pledge not properly used for the benefit of the estate. In this case the position of the beneficiaries, who are the real complainants, is inconsistent with their acts and the decree which they had entered in their favor in *McAuslan* v. *McAuslan*. They can not be permitted to obtain an advantage here upon an entirely contradictory contention. This is not on the doctrine that the decree in *McAuslan* v. *McAuslan* is *res adjudicata* of which the respondent trust companies may avail themselves, but upon the principle that, having obtained an advantage in the Superior Court upon one position, the complainants should not be permitted to obtain a decree from that court in another proceeding relating to the same matter upon an entirely inconsistent and contrary claim. The rule is stated in 2 Black on Judgments, § 632, as follows: a party is forbidden "to assume successive positions, in the course of a suit or series of suits, in reference to the same facts or state of facts which are inconsistent with each other or mutually contradictory." *McDonald* v. *Rainor*, 8 Johns. 345. In *Davis* v. *Cornwall*, 68 Fed. 522, at 525, the court refers to this principle on "the salutary doctrine of estoppel, which prohibits parties from playing fast and loose with courts of justice."

190

Another, and it appears to us substituted reason why the court should not declare the pledge to be invalid as security for any portion of the $90,000 is that although the respondent trust companies were not parties in *McAuslan* v. *McAuslan* the respondent trustee George R. McAuslan was, and against him a decree was obtained in that case adjudging him and his co-trustee personally accountable to the complainants for a larger sum because all of the $90,000 borrowed upon the pledge became a part of the funds of the estate. If the complainants should be permitted to succeed as to all or any part of their present claim, then in an accounting, which has been prayed for in this bill, the respondent trust companies would be entitled to a decree against the respondent George R. McAuslan, adjudging that at least the sum of $22,000 of loans made by the trust company to the trustees was not an indebtedness of the estate, but of the trustees, and was not secured by the pledge of stock, although in *McAuslan* v. *McAuslan* these complainants obtained a decree against the respondent George R. McAuslan and his co-trustee based in part upon the finding that all of the $90,000 was an indebtedness of the estate.

Our conclusion is that the complainants are not entitled to any of the relief prayed for. The respondent Union Trust Company holds all of the shares of stock of the Boston Store Land Company as security for the repayment of the balance of the loans made to the trustees by the Manufacturers Trust Company. The complainants have only the right to redeem said shares in accordance with the terms of the pledge.

The decree appealed from is reversed.

The cause is remanded to the Superior Court with direction to enter a decree dismissing the bill of complaint, with costs for the respondents.

*Tillinghast & Collins, William R. Tillinghast, James C. Collins, Zechariah Chafee, Jr.*, for complainants.

*Gardner, Moss & Haslam, William W. Moss, Henshaw & Sweeney*, for respondents.